**UNITED STATES of America,**

v.

**George R. DALE, Charles Pace and Aaron Juan Johnston.**

**Crim. A. No. 3:94–CR–2BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 11, 1994.

**150**

John Dowdy, Jackson, MS, for U.S.

Grady F. Tollison, Jr. (Retained), Tollison, Austin & Twiford, Oxford, MS, for George R. Dale.

Weaver Gore (Retained), Michael J. Malouf, Malouf & Malouf, Jackson, MS, for Charles Pace.

David C. Dunbar (Retained), Holcomb Dunbar Connell Chaffin Willard, Jackson, MS, for Aaron Juan Johnston.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Motion for Leave to Intervene to Quash Subpoena of Tom Fanning ("Fanning"). Having considered the Motion, the Response of Defendant Aaron J. Johnston ("Johnston") and having heard oral argument from counsel for Fanning, Johnston, Charles Pace ("Pace") and the United States of America ("the government"), the Court finds that the Motion is well taken and should be granted.

1. The government apparently contested the issuance of the subpoenas duces tecum before the Magistrate Judge.

2. The other persons whose personnel files were requested in the subpoena were Charles Pace, Jimmy Blissett, Richard Spong, Rhonda Rhourk, Charles Weeks and Tom Gober. These files were produced by MID without objection by any of these named persons.

3. The present Motion is not an appeal of a ruling by the Magistrate Judge because Fanning had no

### I. *Background*

On November 18, 1993, Johnston filed a motion requesting the Court to allow him to issue subpoenas duces tecum to third party witnesses for production of evidence before trial pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. This motion was granted by the United States Magistrate Judge in an Order entered on February 7, 1994.[1] Subsequently, on March 4, 1994, Johnston issued a subpoena duces tecum to the Mississippi Commissioner of Insurance, George Dale ("Dale"), requesting the personnel files of seven persons who were employed or had recently been employed by the Mississippi Insurance Department ("MID"), including the file of Tom Fanning.[2] On this same date, Fanning sent a memo to Charles Weeks, Deputy Commissioner at MID, which stated that "[i]n regard to the subpoena issued in cause No. 3:94cr2LN, I object to the production of my personnel file as being a violation of my right to privacy." MID complied with the subpoena by providing copies of the named files to Defendant Johnston. Due to Fanning's objection, however, counsel for Johnston and Fanning agreed that the copies of documents from Fanning's personnel file would remain sealed until the Court could decide this issue.

A hearing was held before this Court on April 6, 1994.[3] Attorneys for Johnston, Pace, Fanning and the government were present at this hearing.[4] The Court heard arguments from all counsel present, with the exception of counsel for the government who did not contest the subpoena at this hearing. After all counsel were heard, the Court adjourned to examine the documents contained in Fanning's personnel file *in camera* with the assistance of Fanning and his attorney. Dur-

knowledge of the Rule 17(c) Motion by Johnston which was filed in November, 1993. Fanning did not become aware of the subpoena until it was received by MID on March 4, 1994.

4. Fanning also personally attended the hearing. Defendant Dale was not present at this hearing. The Court notes, however, that in his status as Commissioner of Insurance for the State of Mississippi, Dale has access to the personnel files of all employees of MID.

ing this cursory inspection of the documents from Fanning's personnel file, the Court neither found nor was directed to any information which might be embarrassing in nature to Fanning. The file appeared to contain the types of information which might appear in any personnel file.[5]

The following information was placed in the record at the hearing on April 6, 1994. Fanning was hired on a contract basis to examine Blue Cross Blue Shield ("BCBS") on May 9, 1991. On July 30, 1991, MID requested the Mississippi legislature to create a permanent slot within the department for Fanning. In August, 1991, Tom Gober, Chief Auditor on the BCBS audit and Fanning's boss, was pulled off of the BCBS audit. On October 15, 1991, Fanning became a full-time employee of MID. Approximately two days later, Fanning was taken out of the field, as his BCBS field work was complete, and moved into the office. According to Fanning, his work on the BCBS audit ended within days of his becoming a permanent employee. Fanning did, however, participate in the preparation of the final report of the audit of BCBS by typing it and by editing one paragraph.

Fanning's personnel file contains evaluation reports of his work at MID entitled "Performance Certification and Appraisal Form State of Mississippi Employee Performance Report." Three such evaluations are in the file, dated April 20, 1992, October 20, 1992, and May 25, 1993. Each form contains a designation for "Previous Formal Appraisal Period." On the evaluation dated April 20, 1992, the document reads as follows: "Previous Formal Appraisal Period: None—New Employee." This evaluation appears to contain no reference to the work Fanning did as a contract employee and appears to cover only his work as a full-time employee. The Court therefore finds that Fanning's personnel file contains no evaluation for the period he worked as a contract employee while he was assigned to the BCBS audit.

## II. *Analysis*

▮▮▮ Rule 17(c) of the Federal Rules of Criminal Procedure provides in relevant part as follows:

> A subpoena may ... command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Fed.R.Crim.P. 17(c). The United States Supreme Court has adopted a four-part test for the required showing a party must make in order to survive a motion to quash a subpoena duces tecum under Rule 17(c):

> [T]he moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974) (citation omitted). The Court, in making the determination whether compliance with the subpoena would be "unreasonable or oppressive," Fed.R.Crim.P. 17(c), must also consider the privacy interests of Fanning. Such interests fall within "the confidentiality strand of privacy." *Plante v. Gonzalez*, 575 F.2d 1119, 1133 (5th Cir.1978) (citing *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). In cases involving the right to confidentiality, a balancing test should be applied to determine whether the material should be disclosed. *Id.* at 1134.

The Court notes that the determination concerning whether Fanning's personnel rec-

---

**5.** The Court did find a letter in the file from the National Association of Insurance Commissioners to George Dale which was marked "CONFIDENTIAL." Fanning informed the Court that his superior told him that the letter had been placed in his file by mistake. Therefore, this letter will not be subject to the findings contained in this Memorandum Opinion and Order, but will be considered by the Court at a later date.

ords should be disclosed to the Defendants [6] is a matter of federal criminal and evidence law. *In re Special April 1977 Grand Jury,* 581 F.2d 589, 593 (7th Cir.), *cert. denied sub nom Scott v. United States,* 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978). The personnel records of an employee working for a public body in Mississippi are exempt from the Mississippi Public Records Act of 1983, and are thus not generally available to the public. Miss.Code Ann. § 25–1–100 (1991). This exemption or privilege does not apply, however, as a matter of federal law. Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or *in rules prescribed by the Supreme Court pursuant to statutory authority,* the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501 (emphasis added). Therefore, Rule 17(c) and its interpretation by the courts governs whether Fanning will be able to prevent the production of his personnel file to the Defendants.

■ The Court finds that the Defendants have not sustained their burden of proof under the four-part test from *Nixon.* The Court examined Fanning's personnel file *in camera* and saw nothing which might be relevant to the Defendants' case. Regarding the second element in the test, the documents are probably not otherwise procurable by any other means. The Court notes that Fanning has refused to be interviewed by defense counsel. Third, the Defendants can

certainly prepare for trial without the aid of the documents in Fanning's file, and failure to obtain these documents will not delay the trial in this matter. Finally, the Defendants are admittedly on a "fishing expedition" to see what type of information might be contained in the files which could aid their defense. The Defendants are apparently interested in Fanning's file to obtain information for the purpose of attacking his credibility, as opposed to finding any substantive evidence which might be admissible at trial. "This use is generally insufficient to justify the pretrial production of documents ... and [there is] no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States." *United States v. Fields,* 663 F.2d 880, 881 (9th Cir.1981) (citing *Nixon,* 418 U.S. at 701, 94 S.Ct. at 3104; *United States v. Cuthbertson,* 651 F.2d 189, 195 (3d Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981)). The Court finds that cross-examination is available to the Defendants, and this tool should suffice for the purpose of attacking Fanning's credibility.

■ Although the Defendants did not meet their burden under Rule 17(c) as set forth in the four-part *Nixon* test, had they met that burden, the Court would have had to balance the Defendants' interest in obtaining the documents with Fanning's right to confidentiality. Although the file contains nothing of an embarrassing nature which Fanning would not want disclosed, "[t]he Supreme Court has clearly recognized that the privacy of one's personal affairs is protected by the Constitution." *Plante,* 575 F.2d at 1134. This privacy right must not be minimized, even in a case where a criminal defendant is seeking the material. Because the Defendants failed to establish their right to the documents contained in Fanning's personnel file under Rule 17(c), the Court need not determine whether Fanning's right to privacy would have outweighed the Defendants right to inspect Fanning's personnel file.

---

**6.** The use of "Defendants," in the plural, refers to Defendants Johnston and Pace, both of whom argued for the disclosure of Fanning's personnel file at the hearing conducted in this matter. As noted previously, Dale was not represented at the hearing concerning the current subpoena, apparently because Dale has access to all personnel files of persons employed by MID.

III. *Conclusion*

For the reasons set forth in this Memorandum Opinion and Order, the Court finds that the Motion for Leave to Intervene to Quash Subpoena is hereby granted. The documents, which have been produced by the MID pursuant to the subpoena duces tecum have been delivered to the Court by Defendant Johnston and will be sealed and held by the Court in the event such documents become relevant at a later date. The Clerk of Court is hereby directed to seal the documents which comprise Tom Fanning's personnel file with the Mississippi Insurance Department, to file them in this cause, and to maintain them in a sealed condition until further order of the Court.

The Motion to Quash the Subpoena is accordingly granted.

SO ORDERED.